# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Antonio Delk,

                    Petitioner,                              **Civil File No: 13-cv-89 (JRT/SER)**

v.

Warden Michelle Smith,

                    Respondent.                              **REPORT AND RECOMMENDATION**

        Antonio Delk, *Pro Se*, No. 223282, MCF–Stillwater, 970 Pickett Street North, Bayport, Minnesota 55003.

        Michael J. Lieberg, Esq., Stearns County Attorney's Office, 705 Courthouse Square, Room 448, St. Cloud, Minnesota 56303, for Respondent.

        Jennifer R. Coates and Matthew Frank, Esqs., Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1800, St. Paul, Minnesota 55101, for Respondent.

STEVEN E. RAU, United States Magistrate Judge

        The above-captioned case comes before the undersigned on Petitioner Antonio Delk's

("Delk") Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State

Custody ("Habeas Petition") [Doc. No. 1].  Following remand from the Minnesota Court of

Appeals, Delk was convicted of second-degree unintentional murder and received a 240-month

sentence, which he is currently serving.  *State v. Delk*, 781 N.W.2d 426, 428 (Minn. Ct. App.

2010) ("*Delk II*").[1]  In his Habeas Petition, Delk argues that he is entitled to relief because he did

not receive effective assistance of appellate and post-conviction counsel and because he was

---

[1]        The Court refers to this case as "*Delk II*" because it is the second Minnesota Court of Appeals case reviewing Delk's claims.  *See* Background, *infra*.

denied his right to a fair trial when the district court resentenced him without ordering a new trial. (Habeas Pet. at 5–6).   Respondent argues Delk's right to a fair jury trial was not violated, and therefore Delk has neither an independent ground for habeas relief nor grounds to maintain his ineffective-assistance-of-appellate-counsel claim.   (Mem. in Opp'n to Granting a Writ of Habeas Corpus & App., "Mem. in Opp'n") [Doc. No. 7 at 5–7].[2]   Respondent also argues that Delk's claim that he was denied effective assistance of post-conviction counsel is not appropriate for habeas review.   (*Id.* at 2–5).

This matter has been referred for the resolution of pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and District of Minnesota Local Rule 72.1.   For the reasons stated below, the Court recommends denying Delk's Habeas Petition and dismissing the action.

## I.   BACKGROUND

On November 26, 2005, Delk and others were kicked out of a party at an apartment building.  *State v. Delk*, No. A07-1861, 2008 WL 5333757, at *1 (Minn. Ct. App. Dec. 23, 2008) ("*Delk I*").   Delk fired shots "outside the apartment building toward the unit in which the party was taking place.   One of the shots struck and killed T.M. inside the apartment unit."  *Id.*; *see also Delk II*, 781 N.W.2d at 428.   A jury convicted Delk of "second-degree intentional murder, second-degree unintentional murder, third-degree murder[,] and second-degree assault with a dangerous weapon."  *Delk I*, 2008 WL 5333757, at *1.

### A.   Direct Appeals

Minnesota State Assistant Public Defender Marie L. Wolf ("Wolf") represented Delk on appeal, where Delk argued the following grounds compelled overturning his convictions:

---

[2]     This document does not have page numbers.   For ease of reference, the Court considers the first page page 1, the second page page 2, etc.

(1) the district court erred in denying his motion to suppress primer gunshot residue evidence at trial because the test, as applied to him, was unreliable; (2) he was denied his right to a fair trial by the presence of two unauthorized persons in the jury room during deliberations; (3) the evidence was insufficient to prove that he acted with intent to kill; and (4) the prosecutor committed misconduct during closing argument by telling the jury to "do the right thing" and that some witnesses could not be accomplices.

*Id.* at *1.[3]   Delk also made several *pro se* arguments.  *Id.*  Specifically, he argued: (1) that the district court erred when it "admitt[ed] evidence of his co-defendants' convictions," (2) that "his right to a fair trial was violated because there were no minorities in his prospective jury pool[,]" (3) that his right to due process was denied because "the district court instructed the jury that it must reach a unanimous verdict[,]" and (4) that the district court erred in "amend[ing] his indictment when it gave the jury an instruction on aiding and abetting."  *Id.* at *8–9; *see also* (Appellant's *Pro Se* Supplemental Br., "*Pro Se* Supplemental Br.—First Direct Appeal," *State v. Delk*, No. A07-1861 (Minn. Ct. App. Mar. 5, 2008)).[4]  The Minnesota Court of Appeals affirmed the district court on every issue except one.  *See generally*, *Delk I*, 2008 WL 5333757.  Delk's conviction for second-degree intentional murder was reversed and vacated because the appellate court found the evidence did not support intentionality.  *Id.* at *6.  The case was remanded for resentencing.  *Id.* at *6, 9.  Both parties filed petitions for further review, which were denied.  Order, *State v. Delk*, No. A07-1861 (Minn. Mar. 17, 2009).

"On remand, the district court dismissed the intentional second-degree murder charge and vacated the conviction for that count.  The district court then adopted the jury's guilty verdict on

---

[3]    The Court refers to this appeal as the "First Direct Appeal."

[4]    This brief is signed but undated.  *See* (*Pro Se* Supplemental Br.—First Direct Appeal). Because the public docket shows it was filed on March 5, 2008, the Court uses that date.  *See* Case Management System, Minn. Appellate Cts., http://macsnc.courts.state.mn.us/ctrack/publicLogin.jsp (click "Accept" and search for case number A07-1861) (last visited Jan. 26, 2014).

the second-degree unintentional murder count, entered a judgment of conviction, and sentenced [Delk] to 240 months." *Delk II*, 781 N.W.2d at 428.  Again, Delk appealed and was represented by Wolf.[5]  *Id.* at 427–28.  Through counsel, Delk argued his sentence must be overturned because although it was within the range of a presumptive sentence for his charge (179 to 252 months), it was longer than the "middle-of-the-box" range, 210 months.   *Id.* at 428.  Additionally, Delk filed a *pro se* supplemental brief arguing "that his sentence on remand for second-degree unintentional murder constitutes a double jeopardy violation and that the jury should have been instructed on Minn. Stat. § 609.11 (2004)."[6]  *Id.* at 430; *see also* (Appellant's *Pro Se* Supplemental Br., "*Pro Se* Supplemental Br.—Second Direct Appeal," *State v. Delk*, No. A09-1125 (Minn. Ct. App. Oct. 22, 2009)).   The Minnesota Court of Appeals affirmed the district court on all issues.  *Delk II*, 781 N.W.2d at 430.  The Minnesota Supreme Court denied Delk's petition for further review, and the United States Supreme Court denied Delk's petition for certiorari.  *Delk v. Minnesota*, 131 S. Ct. 920, 921 (2011); Order, *State v. Delk*, No. A09-1125 (Minn. July 20, 2010).

## B.     First Habeas Petition

Delk filed a habeas petition in this District on April 26, 2011.  Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody ("First Habeas Petition"), *Delk v. King*, No. 11-cv-1101 (JRT/SER) [Doc. No. 1].  This Court ordered Delk to file an affidavit or amended habeas petition addressing whether his state-court claims were exhausted and warned that if he did not comply within the allotted time period, the action would be dismissed.  Order Dated May 5, 2011 at 5, *Delk v. King*, No. 11-cv-1101 (JRT/SER) [Doc. No. 4].  Delk did not

---

[5]     The Court refers to this appeal as the "Second Direct Appeal."
[6]     Section 609.11 covers minimum sentences of imprisonment.  Minn. Stat. § 609.11.

comply with this Court's Order, and on this Court's recommendation, the Honorable John R. Tunheim dismissed the action without prejudice.  Report & Recommendation, *Delk v. King*, No. 11-cv-1101 (JRT/SER) [Doc. No. 5]; Order Adopting Report & Recommendation, *Delk v. King*, No. 11-cv-1101 (JRT/SER) [Doc. No. 6].

### C.    Post-Conviction Proceedings

While Delk's First Habeas Petition was pending, he moved for post-conviction relief *pro se* in Stearns County district court.  *Delk v. State*, No. A11-2192, 2012 WL 3792308, at *1 (Minn. Ct. App. Sept. 4, 2012) ("*Delk III*"); *see also* (Pet'r's Pet. for Post-Conviction Relief Pursuant to Minn. Stat. [§] 590.01 Subd[iv]. 4(b)(5)(c) & Mem. of Law, "Post-Conviction Pet.," *Delk v. State*, No. 73-K8-005488 (Minn. Dist. Ct. Aug. 16, 2011)).  "[Delk] argued that, after [the] court [of appeals] vacated his conviction for second-degree intentional murder, he was entitled to a jury trial on the additional charges of second-degree unintentional murder and third-degree murder."  *Delk III*, 2012 WL 3792308, at *1.  More specifically, Delk argued that the jury's verdicts were "defective," because the district court entered the jury's verdicts for the remaining murder charges without ordering a new trial.  (Pet'r's Mem. of Law in Supp. of Pet. for Post-Conviction Relief at 3, "Post-Conviction Mem.," *Delk v. State*, No. 73-K8-05-005488 (Minn. Dist. Ct. Aug. 16, 2011)).[7]  Delk argues the failure to order a new jury trial violated his Fifth, Sixth, and Fourteenth Amendment rights under the federal constitution. *Id.*  "[Delk] also argued that he received ineffective assistance from trial and appellate counsel because they failed to raise this argument, and this court [referring to the appellate court] did not previously address

---

[7]    This document does not have page numbers.  For ease of reference, the Court considers the first page page 1, the second page page 2, etc.

this claim when he raised it on his own behalf." *Delk III*, 2012 WL 3792308, at *1; *see also* (Post-Conviction Mem. at 4).

The district court denied Delk's Post-Conviction Petition without a hearing and concluded that Delk's "defective verdict" argument "was procedurally barred under *State v. Knaffla*, . . . 243 N.W.2d 737 ([Minn.] 1976) because [the court of appeals] addressed his *pro se* arguments in the [S]econd [Direct A]ppeal." *Delk III*, 2012 WL 3792308, at *1 (citing *Delk II*, 781 N.W.2d at 430). The district court also stated that Delk had not alleged sufficient facts to warrant a hearing on his ineffective-assistance-of-counsel claims, and noted that "trial tactics and which claims to appeal rest in counsel's discretion." *Id.*

Delk appealed, arguing it was error to not grant him an evidentiary hearing on his defective verdict and ineffective assistance of counsel claims.[8] *Id.* at *2–3. He also argued, for the first time, "that the district court erred by failing to instruct the jury on the lesser-included offenses of first- and second-degree manslaughter." *Id.* at *4. The court of appeals did not consider this argument because Delk failed to raise it in the district court, and affirmed the district court's decision. *Id.* at *3–4. The Minnesota Supreme Court denied Delk's petition for further review. Order, *Delk v. State*, No. A11-2192 (Minn. Nov. 20, 2012).

### D.    Current Habeas Petition[9]

Delk filed this Habeas Petition on January 9, 2013, asserting four grounds for relief: (1) denial of the right to effective post-conviction counsel, (2) denial of the right to appellate counsel

---

[8]    The Court refers to this appeal as the "Post-Conviction Appeal."

[9]    Typically, "a second or successive" habeas petition is not permitted by statute. *See* 28 U.S.C. § 2244(b). A petition that is second chronologically is not "second or successive" for the purposes of § 2244(b) where the first habeas petition was not adjudicated on its merits. *Stewart v. Martinez-Villareal*, 523 U.S. 637, 644–45 (1998). Therefore, because Delk's First Habeas Petition was dismissed for failure to exhaust state court remedies, his current Habeas Petition is not barred by § 2244(b).

to appeal from the denial of post-conviction relief, (3) denial of Delk's Sixth- and Fourteenth-Amendment rights to a fair trial,[10] and (4) ineffective assistance of appellate counsel. (Habeas Pet. at 5–6). Respondent Michelle Smith (the "State") filed an answer, a memorandum in opposition to Delk's Habeas Petition, an appendix, and state court records. *See* (Resp't's Answer, "Answer") [Doc. No. 6]; (Mem. in Opp'n);[11] (Notification of Conventional Filing of State Ct. R. Dated Dec. 10, 2013) [Doc. No. 8]; (Notification of Conventional Filing of State Ct. R. (2 of 2) Dated Dec. 11, 2013) [Doc. No. 9]; (Notification of Conventional Filing of State Ct. R. (3 of 3) Dated Dec. 16, 2013) [Doc. No. 11].

## II.   DISCUSSION

### A.   Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes the standards that govern substantive review of Delk's habeas claims. The relevant portion of AEDPA, 28 U.S.C. § 2254(d), provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

---

[10]   Ground Three of Delk's Habeas Petition refers to the Fourth Amendment. (Habeas Pet. at 6). But because the Fourth Amendment refers to search and seizure, which is not at issue in this case, and because this ground is nearly identical to the claim raised in Delk's petition for review of the Post-Conviction Appeal, the Court assumes Delk meant to refer to the Fourteenth Amendment, as he did in his petition for review. *See* U.S. Const. amend. IV; (Pet. for Review of Ct. of Appeals Decision at 1 ¶ 4, "PFR–Post-Conviction Appeal," *Delk v. State*, No. A11-2192 (Minn. Sept. 27, 2012)).

[11]   The appendix, attached to the State's Memorandum in Opposition, included the three relevant Minnesota Court of Appeals decisions. *See generally* (Mem. in Opp'n). For ease of reference, the Court refers directly to their citations in the North West Reporter or Westlaw as appropriate, rather than referring to the Appendix.

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The Eighth Circuit has explained:

A state court decision is "contrary to" clearly established federal law if it either "arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law" or "decides a case differently than th[e] [Supreme] Court has on a set of materially indistinguishable facts." A state court "unreasonably applies" Supreme Court precedent if it "identifies the correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

*Worthington v. Roper*, 631 F.3d 487, 495 (8th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)).

A writ of habeas corpus can also be granted if the state courts' resolution of a prisoner's criminal case is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In other words, habeas relief can be available if the conviction at issue is based on findings of fact that could not reasonably be derived from the state court evidentiary record. *See id.*

Needless to say, a federal district court is not allowed to conduct its own *de novo* review of a prisoner's constitutional claims. *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004) ("We cannot grant relief under AEDPA by conducting our own independent inquiry into whether the state court was correct as a *de novo* matter."). "AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt . . . ." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations and quotations omitted). Habeas relief cannot be granted unless the petitioner has identified, and substantiated, a specific error committed by the state courts. *See, e.g.*, *Harrington v. Richter*, 131 S. Ct. 770,

8

785–86 (2011) (explaining the burdens faced by a federal habeas petitioner seeking relief based on an alleged error by the state court).  Moreover, the petitioner must show that the error is one that is actionable under § 2254(d).  *See id.*  The petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 786–87.

### B.    Procedural Default

A federal district court may entertain a state prisoner's application for a writ of habeas corpus only when the petitioner has exhausted the state court remedies.  28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Gill v. Swanson*, No. 07-4555 (JMR/AJB), 2008 WL 4371378, at *2–3. (D. Minn. Sept. 22, 2008).  The exhaustion requirement has been summarized as follows:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies . . . , thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.  To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal citations and quotations omitted). Accordingly, to exhaust his state court remedies, a petitioner must fairly present his constitutional claims to the highest available state court before seeking relief in federal court. *O'Sullivan*, 526 U.S. at 845.  "A petitioner meets the fair presentation requirement if the state court rules on the merits of his claims, or if he presents his claims in a manner that entitles him to a ruling on the merits." *Gentry v. Lansdown*, 175 F.3d 1082, 1083 (8th Cir. 1999) (citation omitted).  Thus, a claim has not been fairly presented if a state appellate court expressly declines

to address it on the merits because the petitioner violated state procedural rules. *Hall v. Delo*, 41 F.3d 1248, 1250 (8th Cir. 1994).

When a petition contains claims that have not been fairly presented, a court must determine whether state procedural rules would allow hearing on the merits. *Gill*, 2008 WL 4371378, at *3 (citations omitted). If the state's procedural rules preclude a hearing on the merits, the petitioner has procedurally defaulted and is procedurally barred from federal habeas relief unless either cause and prejudice or a miscarriage of justice can be shown. *See*, *e.g.*, *id.* (citing *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997)).

Generally, "[w]hen a state court remedy is available for a state prisoner's unexhausted claim, the federal habeas court must defer action until the claim is exhausted, either by dismissing the federal petition without prejudice or by using the 'stay and abeyance' procedure . . . ." *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005). When a petitioner has not exhausted the state court remedies for a claim and state procedural rules preclude any further attempts to satisfy the exhaustion requirement as to that claim, then the claim is not truly unexhausted; rather, the claim is procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *McCall*, 114 F.3d at 757.

Minnesota law provides that all matters raised in a petitioner's direct appeal and all claims known but not raised are barred from consideration in a subsequent post-conviction petition. *McCall*, 114 F.3d at 757 (citing *State v. Knaffla*, 243 N.W.2d 737, 741 (1976)). A petitioner can avoid the state court procedural bar only by demonstrating cause for default and actual prejudice as a result of the violation of federal law or by showing actual innocence (also called the miscarriage of justice exception). *Schlup v. Delo*, 513 U.S. 298, 314–17 (1995); *McCall*, 114 F.3d at 758.

**C.      Denial of Fair Jury Trial Based on Defective Verdict Claim (Ground Three)**

Ground Three of Delk's Habeas Petition is what the Court will refer to as Delk's "Defective-Verdict Claim:"  Delk argues that he was denied his right to a fair trial in violation of his Sixth- and Fourteenth-Amendment rights when, on remand from Delk's First Direct Appeal, the district court entered the jury's verdicts on the second-degree unintentional murder and third-degree murder charges, which "caused a defective verdict."  (Habeas Pet. at 6).  Instead of resentencing him for his second-degree unintentional murder conviction, Delk argues, the district court should have ordered a new jury trial on those claims.  (*Id.* at 6).  Because Delk's remaining grounds for habeas relief—all relating to ineffective assistance of counsel—are based on the Defective-Verdict Claim, that ground will be addressed first.

The State concedes Delk raised the Defective-Verdict Claim in state court proceedings but argues it may be unexhausted or procedurally defaulted.  (Answer at 2);[12] (Mem. in Opp'n at 5).  Additionally, the State argues Delk "never provided a coherent legal explanation as to how the jury's verdicts were defective[]" and the claim is meritless.  (Answer at 2); *see also* (Mem. in Opp'n at 5).

**1.      Exhaustion**

Whether the claim is exhausted is examined first.  Delk did not raise his Defective-Verdict claim in his First Direct Appeal because it is based on the district court's actions on remand from the First Direct Appeal.  *See Delk I*, 2008 WL 5333757, at *1, 8–9 (summarizing Delk's appellate arguments made by counsel and in his *pro se* supplemental briefing in the First

---

[12]      This document does not have page numbers.  For ease of reference, the Court considers the first page page 1, the second page page 2, etc.

Direct Appeal). The Court therefore analyzes whether the claim is exhausted by reviewing the claims raised in the Second Direct Appeal and in post-conviction proceedings.

On the Second Direct Appeal, Delk argued that his Fifth, Sixth, and Fourteenth Amendment rights were violated under the federal Constitution and under article 1, sections 6 and 7 of the Minnesota Constitution. (*Pro Se* Suppl. Br.—Second Direct Appeal at 2). Specifically, Delk argued that when the district court entered the conviction of second-degree unintentional murder using the same facts used by the Minnesota Court of Appeals to vacate the second-degree intentional murder conviction, it violated his right to be free from double jeopardy, his right to due process, his right to trial by jury, and his right to a fair trial. (*Id.* at 2–3). The Minnesota Court of Appeals considered this argument an argument for a "double jeopardy violation," and found it had no merit. *Delk II*, 781 N.W.2d at 430. Delk's counsel filed a petition for review, but it did not seek review of the double-jeopardy violation. (Pet. for Review of Decision of Ct. of Appeals, "PFR–Second Direct Appeal," *State v. Delk*, No. A09-1125 (Minn. June 3, 2010)).

In his Post-Conviction Petition, Delk argued the jury's verdicts convicting him of second-degree unintentional murder and third-degree murder were defective because there was no proof beyond a reasonable doubt that he committed those crimes, and because "the judge directed the verdict for the jury." (Post-Conviction Mem. at 4). Delk argues this violated his right to a fair trial under the Fifth, Sixth, and Fourteenth Amendments. (*Id.* at 3). The district court referred to this as Delk's "defective verdict" claim, and found that it could not consider the claim on its merits because it was procedurally barred by *Knaffla*. *Delk III*, 2012 WL 3792308, at *1 (citing

*Knaffla*, 243 N.W.2d 737).[13]   The Minnesota Court of Appeals agreed.  *Id.* at *2.  But the appellate court explained further that, to the extent Delk's "defective verdict" claim at the post-conviction level was different from the "double jeopardy" claim presented on his Second Direct Appeal, the district court did not abuse its discretion when it denied Delk's request for an evidentiary hearing.  *Id.* at *2.  In his petition for review to the Minnesota Supreme Court ensuing from the Post-Conviction Appeal, Delk made the same "defective verdict" claim that he made in his Post-Conviction Petition and in his Post-Conviction Appeal.  *Compare* (PFR–Post-Conviction Appeal at 1 ¶ 4) *with* (Post-Conviction Pet. 2) *and* (Post-Conviction Appeal at 5).  Delk did not make any legal or factual argument about the "defective verdict" claim, beyond merely stating the issue.  *See* (PFR—Post-Conviction Appeal at 3).  Given this procedural posture, whether Delk's Defective-Verdict Claim in the Habeas Petition is exhausted depends on whether his "double jeopardy" claim from his Second Direct Appeal is construed to be the same claim as the "defective verdict" claim made in post-conviction proceedings.

### a.      If the "Double Jeopardy" and "Defective Verdict" Claims Are the Same

First, if the "double jeopardy" and "defective verdict" appellate claims are the same, the claim is procedurally defaulted.  Delk raised this claim on his Second Direct Appeal, which, given that the actions complained of took place during the resentencing proceedings following the First Direct Appeal, was the first time Delk could raise it.  *See* (*Pro Se* Suppl. Br.—Second Direct Appeal at 2).  But Delk did not raise it in his second petition for review to the Minnesota Supreme Court ensuing from the Second Direct Appeal.  *See* (PFR–Second Direct Appeal).

---

[13]      *Knaffla* prevents a Minnesota court from providing collateral review when either an issue has been litigated on direct appeal, or an issue was not litigated on direct appeal, but it should have been.  *Knaffla*, 243 N.W.2d at 741.

Therefore, Delk did not fairly present this claim to the highest available state court before seeking relief in federal court, and the claim is not exhausted. *See O'Sullivan*, 526 U.S. at 845. Thus, the Court now turns to whether a state procedural rule precludes a hearing on the merits. *McCall*, 114 F.3d at 757.

Under Minnesota law, when a petitioner has directly appealed, "'all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for post[-]conviction relief.'" *Id.* (quoting *Knaffla*, 243 N.W.2d at 741). Therefore, Minnesota law prevents further review of this claim, and it is procedurally defaulted because Delk knew of the claim (and in fact, raised it before the Minnesota Court of Appeals) but failed to raise it before the Minnesota Supreme Court. *Id.*; *see also Gill*, 2008 WL 4371378, at *3. Delk can only overcome his procedural default by showing that he had either cause for the default and suffered actual prejudice, or by showing actual innocence. *Coleman*, 501 U.S. at 750. Because no argument supporting either exception was made and a review of the record does not support either exception, Delk is procedurally defaulted and this Court cannot consider the claim for the purposes of federal habeas review. *See id.*; *Winfield v. Roper*, 460 F.3d 1026, 1036 (8th Cir. 2006).

### b. If the "Double Jeopardy" and "Defective Verdict" Claims Are Separate Claims

The Court finds that if Delk's "double jeopardy" and "defective verdict" claims are distinct claims, the "defective verdict" claim is exhausted and is appropriate for habeas review at this stage.

Delk raised the "defective verdict" claim for the first time in his Post-Conviction Petition. *See* (Post-Conviction Pet. at 2). Whether the "defective verdict" claim could have been brought on Delk's Second Direct Appeal, which may then bar further review in post-conviction

proceedings under *Knaffla*, was not addressed by the appellate court.  *Delk III*, 2012 WL 3792308, at *2.   Instead, the appellate court considered the "defective verdict" claim on its merits.   *Id.*   Therefore, this Court assumes without deciding that *Knaffla* does not bar the "defective verdict" claim (as separate from the "double jeopardy" claim) and considers the claim properly raised in Delk's Post-Conviction Petition.

Delk also raised the "defective verdict" claim in his brief submitted in the Post-Conviction Appeal, and in his petition for review to the Minnesota Supreme Court seeking review of the Post-Conviction Appeal decision.  *See* (*Pro Se* Post-Conviction Appeal Br. at 1, 5–6); (PFR–Post-Conviction Appeal at 1 ¶ 4).   In the petition for review of the Post-Conviction Appeal decision, Delk stated the "defective verdict" claim, but presented no supporting legal or factual argument.  (PFR–Post-Conviction Appeal at 1 ¶ 4 (stating claim), 3–4 (making arguments in support of Delk's claim for ineffective assistance of post-conviction counsel and not addressing the "defective verdict" claim)).   But the Court must construe all *pro se* filings liberally, and therefore considers the claim to have been raised to the Minnesota Supreme Court. *See Frey v. Schuetzle*, 78 F.3d 359, 361 (8th Cir. 1996) (stating that "as a general rule[,] a *pro se* habeas petition must be given a liberal construction and that such a petitioner is not required to identify specific legal theories or offer case citations in order to be entitled to relief[]").   Delk's statement of his "defective verdict" claim in his petition for review is nearly identical to the Defective-Verdict Claim in his Habeas Petition.  *Compare* (PFR–Post-Conviction Appeal at 1 ¶ 4) *with* (Habeas Pet. at 6).   Therefore, the Defective-Verdict Claim is exhausted for the purposes of federal habeas review.  *See O'Sullivan*, 526 U.S. at 842 (a federal district court will only consider a federal habeas claim under 28 U.S.C. § 2254 when the petitioner has exhausted all state court remedies).

### 2.      Relief Under § 2254

Construing Delk's Habeas Petition liberally requires the Court to consider whether Delk is entitled to relief under 28 U.S.C. § 2254 for his Defective-Verdict Claim.  Delk must show that the Minnesota Court of Appeals decision failed in one of two ways.  28 U.S.C. § 2254(d).  First, Delk may show that the decision was contrary to or involved an unreasonable application of clearly established federal law.  § 2254(d)(1).  Second, Delk may show that the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  § 2254(d)(2).  Because Delk does not make either showing, the Court finds Delk is not entitled to habeas relief.

Delk argues that the trial court denied him his Sixth- and Fourteenth-Amendment rights because it refused to grant him a new trial, and instead entered the jury's verdicts for second-degree unintentional murder and third-degree depraved-mind murder.  (Habeas Pet. at 6); *see also* (Post-Conviction Mem. at 3).  Delk's Post-Conviction Memorandum raises the Fifth Amendment, which prevents the government from trying a defendant twice for the same crime.  U.S. Const. amend. V; *see also* (Post-Conviction Mem. at 3).

In considering Delk's Defective-Verdict Claim during the Post-Conviction Appeal, the Minnesota Court of Appeals concluded that even before it remanded Delk's case for resentencing, "the jury had already issued its verdict convicting [Delk] of [second-degree unintentional murder and third-degree murder].  Because [Delk] had already been convicted of those offenses, the district court's adoption of the jury verdicts and its resentencing did not violate [Delk]'s double-jeopardy rights."  *Delk III*, 2012 WL 3792308, at *2 (citing *Hankerson v. State*, 723 N.W.2d 232, 240 (Minn. 2006) and parenthetically explaining that *Hankerson* stands

for the proposition that "resentencing is merely [a] continuation of original prosecution for double-jeopardy purposes.").

Delk's Habeas Petition makes no argument that the Minnesota Court of Appeals decision was contrary to federal law or was an unreasonable application of federal law.[14]  *See* 28 U.S.C. § 2254(d)(1); (Habeas Pet. at 6).  In *Hankerson*, cited by the Minnesota Court of Appeals in the Post-Conviction Appeal, the Minnesota Supreme Court held that there was no violation of the Constitution's Double Jeopardy Clause when aggravating factors were considered in a resentencing hearing.  *Hankerson*, 723 N.W.2d at 240;[15] *see also Delk III*, 2012 WL 3792308, at *2 (citing *Hankerson*, 723 N.W.2d at 240).   In reaching its determination, the Minnesota Supreme Court considered several United States Supreme Court precedents related to double jeopardy.  *Hankerson*, 723 N.W.2d at 236–41 (citing, *inter alia*, *Sattazahn v. Pennsylvania*, 537 U.S. 101, 111 (2003); *Lockhart v. Nelson*, 488 U.S. 33, 35–38 (1988); *Burks v. United States*, 437 U.S. 1, 16–17 (1978); *United States v. Tateo*, 377 U.S. 463, 466 (1964)).

Of particular relevance, the *Hankerson* court cited *Lockhart*, which held that retrial for an enhanced sentence would not violate the Double Jeopardy Clause when the original sentence was invalid due to erroneously admitted evidence.  *Hankerson*, 723 N.W.2d at 238 (citing *Lockhart*, 488 U.S. at 38).  *Lockhart* specifically noted an exception, first described in the *Burks* case, when the reviewing court reverses the conviction solely for insufficient evidence, as opposed to other trial errors.  *See Lockhart*, 488 U.S. at 39 (citing *Burks*, 437 U.S. at 18).  The exception

---

[14]     The other ground for habeas relief under § 2254(d), that the Minnesota Court of Appeals made an unreasonable determination of the facts in light of the evidence, does not apply to this argument, as the appellate court's analysis appears to be strictly legal.  *See* 28 U.S.C. § 2254(d)(2); *Delk III*, 2012 WL 3792308, at *2.

[15]     *See also Hankerson*, 723 N.W.2d at 236 n.3 (clarifying that the Minnesota Supreme Court considered the double-jeopardy argument under the United States Constitution only, although the Minnesota Constitution has a similar provision).

"was based on the view that an appellate court's reversal for insufficiency of the evidence is in effect a determination that the government's case against the defendant was so lacking that the trial court should have entered a judgment of acquittal, rather than submitting the case to the jury." *Id.* (citing *Burks*, 437 U.S. at 15–17)).

Because the Minnesota Court of Appeals vacated Delk's conviction of second-degree intentional murder for insufficient evidence and its decision did not hinge on erroneously admitted evidence, *Burks* is the United States Supreme Court case most applicable to Delk's case. Under *Burks*, Delk could not be retried for second-degree intentional murder. But in *Burks*, the jury convicted the defendant of only one crime. *Burks*, 437 U.S. at 2–3. Therefore, reversal of his sole conviction left no remaining convictions on which to base resentencing. Here, Delk was convicted of four charges, and the Minnesota Court of Appeals vacated only one conviction. *Delk I*, 2008 WL 5333757, at *1, 6, 9. The jury had already convicted Delk of the remaining charge under which he was sentenced: second-degree unintentional murder. *Delk III*, 2012 WL 3792308, at *2. It was therefore neither contrary to nor a misapplication of federal law as interpreted by the United States Supreme Court to find that Delk's double jeopardy rights had not been violated and habeas relief is not warranted on this claim. *See* 28 U.S.C. § 2254(d)(1).

### D.     Ineffective Assistance of Appellate Counsel (Ground Four)

In Ground Four of his Habeas Petition, Delk argues he received ineffective assistance of appellate counsel during his Second Direct Appeal in violation of his Sixth- and Fourteenth-Amendment rights. (Habeas Pet. at 6).[16] Delk argues that the trial record shows that he was

---

[16]     Delk's Habeas Petition does not specify that his ineffective-assistance-of-appellate-counsel claim is based on the Second Direct Appeal. (Habeas Pet. at 6). But because he argues appellate counsel failed to "raise claims . . . such as the right to demand the government prove its case to a jury beyond a reasonable doubt . . . [,]" the Court interprets this argument to be the

denied his fundamental rights, which were not asserted by appellate counsel in the Second Direct Appeal, but does not elaborate on how his rights were violated.  (*Id.*).

The State reads Delk's claim to argue appellate counsel failed to raise Delk's Defective-Verdict Claim on appeal, which the State argues is without merit because Delk raised the claim himself.  (Answer at 2).  The State also argues that, as the Minnesota Court of Appeals found, appellate counsel's failure to raise a Defective-Verdict Claim was reasonable and therefore did not rise to the level of ineffective assistance of counsel.  (Mem. in Opp'n at 7).  Additionally, the State argues appellate counsel's failure to raise the claim was not unconstitutionally unreasonable.  (*Id.*).

### 1.     Exhaustion

The Court first examines whether the claim was exhausted.  *See Baldwin*, 541 U.S. at 29 (internal citations omitted); *Gentry*, 175 F.3d at 1083 (citations omitted).  The record reflects Delk argued his appellate counsel was ineffective in his Post-Conviction Memorandum.  *See* (Post-Conviction Mem. at 4).  More specifically, Delk argued that appellate counsel was ineffective because she did not raise Delk's new-trial claim (presumably the same as the Defective-Verdict Claim addressed above), which forced him to raise the claim in his *pro se* supplemental brief.  (Post-Conviction Mem. at 4–5).  The district court concluded Delk did not allege sufficient facts regarding this claim to warrant a hearing, and found that "appellate counsel could reasonably have concluded that the claimed issue relating to a 'defective verdict' lacked merit and would have detracted from the sentencing argument."  *Delk III*, 2012 WL 3792308, at *1.

---

same argument in his Post-Conviction Appeal: that appellate counsel failed to raise his new-trial claim based on the actions of the district court when it resentenced him.  *See* (Post-Conviction Mem. at 4).

Delk raised the issue again in the Post-Conviction Appeal.  *See Delk III*, 2012 WL 3792308, at *3; *see also* (*Pro Se* Post-Conviction Appeal Br. at 6–7).  On appeal, Delk argued that "appellate counsel provided prejudicially ineffective assistance by failing to argue that he was entitled to an additional jury trial on the offenses of second-degree unintentional murder and third-degree depraved-mind murder."  *Delk III*, 2012 WL 3792308, at *3.[17]  The Minnesota Court of Appeals found that the district court was correct to deny a hearing on Delk's ineffective-assistance-of-appellate-counsel claim.  *Id.*  It noted that appellate counsel "could easily have concluded that [Delk]'s 'defective verdict' argument would have detracted from counsel's argument related to sentencing."  *Id.*

Finally, Delk raised his ineffective-assistance-of-appellate-counsel claim in his Petition for Review to the Minnesota Supreme Court, although he did not make any argument in support of his claim.  (PFR–Post-Conviction Appeal at 1 ¶ 5).  Regardless, the Court must construe all *pro se* filings liberally, and therefore considers the claim to have been raised to the Minnesota Supreme Court.  *See Frey*, 78 F.3d at 361.  Thus, the claim is exhausted for the purposes of federal habeas review.  *See O'Sullivan*, 526 U.S. at 842 (a federal district court will only consider a federal habeas claim under 28 U.S.C. § 2254 when the petitioner has exhausted all state court remedies).

### 2.      Relief Under § 2254

#### a.      Legal Standard

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 685–86 (1984).  To state a claim for

---

[17]      In post-conviction proceedings, Delk also claimed that trial counsel was ineffective.  *Delk III*, 2012 WL 3792308, at *3.  But because he does not raise that claim in his Habeas Petition, the Court does not address it here.  *See generally* (Habeas Pet.).

ineffective assistance of counsel, a petitioner must demonstrate that (1) counsel's representation was deficient and (2) the deficiency prejudiced his case. *Miller v. Dormire*, 310 F.3d 600, 602 (8th Cir. 2002) (citing *Strickland*, 466 U.S. at 687–88). Both prongs of the *Strickland* test must be satisfied to obtain relief; if either prong is unproven, the reviewing court need not analyze the other prong. *See United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

The first prong requires a petitioner to demonstrate that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Under this prong, the petitioner must show that counsel's representation was objectively unreasonable. *Stacey v. Solem*, 801 F.2d 1048, 1051 (8th Cir. 1986). In conducting such a review, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland*, 466 U.S. at 689. Put simply, counsel's "strategic choices made after thorough investigation . . . are virtually unchallengeable . . ." in a habeas corpus action. *Id.* at 690–91.

*Strickland*'s second prong requires the petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. It is not sufficient for a defendant to show that the error had some "conceivable effect" on the result of the proceeding. *Id.* at 693. Ineffective assistance claims cannot be based on counsel's alleged failure to raise a meritless argument. *See Gray v. Bowersox*, 281 F.3d 749, 756 n.3 (8th Cir. 2002). Further, when a legal argument has no merit, it follows that a defendant cannot be prejudiced as a consequence of its absence as an appellate issue. *See Thompson v. Jones*, 870 F.2d 432, 434–35 (8th Cir. 1988). In other words, appellate counsel is not ineffective simply because that lawyer fails to raise an issue on appeal that has no substance. In the context of § 2254 ineffective assistance of counsel claims, "[t]he

21

question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect[,] but whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009) (internal citations and quotations omitted).

### b.      Ineffective Assistance of Appellate Counsel

In his Habeas Petition, Delk argues that his appellate counsel was ineffective because she did not raise claims related to his "right to demand that the government prove its case to a jury beyond a reasonable doubt when the trial record clearly established such fundamental rights were clearly denied the criminal defendant."  (Habeas Pet. at 6).  Although he includes no further argument, and his petition for review of the Post-Conviction Appeal included nearly the exact same language, Delk's *pro se* supplemental brief submitted in the Post-Conviction Appeal does include additional argument.  *See* (PFR—Post-Conviction Appeal at 1 ¶ 5); (*Pro Se* Post-Conviction Appeal Br. at 6–7).  There, Delk argued that his appellate counsel was ineffective because she did not raise the issue that Delk should be granted a new trial "because the government did not prove its case beyond a reasonable doubt to [the] jury [and] because the judge directed [the] verdict for the jury . . . ." (*Pro Se* Post-Conviction Appeal Br. at 6).  Like the Minnesota Court of Appeals, this Court interprets Delk's argument to mean that appellate counsel was ineffective because it failed to raise Delk's Defective-Verdict Claim, described above.  *See Delk III*, 2012 WL 3792308, at *3.

Appellate counsel's decision not to raise the Defective-Verdict Claim was not objectively unreasonable under *Strickland*.  As the Minnesota Court of Appeals stated in its agreement with the district court, appellate counsel could have concluded that this argument "would have

detracted from counsel's argument relating to sentencing." *Id.* at *3. Thus, Delk fails to satisfy the first prong of *Strickland*.

Even if appellate counsel should have raised the Defective-Verdict Claim—a proposition with which the Court does not agree—Delk was not prejudiced. As the Court determined above, Delk's Defective-Verdict Claim has no merit because it was not contrary to United States Supreme Court precedent when the district court resentenced Delk. Because Delk's underlying Defective-Verdict Claim has no merit, it cannot be said that appellate counsel's failure to raise this claim prejudiced Delk, and therefore does not constitute ineffective assistance of counsel under *Strickland*. *See Thompson*, 870 F.2d at 434–35. The Court recommends that Delk be denied habeas relief on this claim.

### E.    Ineffective Assistance of Post-Conviction Counsel Claims (Grounds One and Two)

Delk argues he was denied effective assistance of post-conviction counsel at both the district-court level and the appellate level. (Habeas Pet. at 5). In Ground One, Delk argues that he did not have effective post-conviction counsel to assist him with his ineffective-assistance-of-trial-counsel claim because the district court could not make its determination on the record, should have examined evidence outside the record, and should have conducted additional "fact-finding." (*Id.*). In Ground Two, Delk argues that he was denied the right to counsel when he appealed the district court's post-conviction decision. (*Id.*). Specifically, Delk argues that the post-conviction court was the first opportunity Delk had to raise a claim for ineffective assistance of trial counsel, and appellate counsel was not appointed. (*Id.*).

As a threshold matter, the State argues that claims of ineffective assistance of counsel at the post-conviction level are not permitted by 28 U.S.C. § 2254(i). (Mem. in Opp'n at 4).[18] The State also argues Delk was not represented by counsel during post-conviction proceedings, and therefore cannot maintain this claim. (Answer at 1). With respect to Ground Two, the State argues that Delk did not request counsel in connection with his appeal of the post-conviction decision. (*Id.* at 2). Additionally, the State argues that the claim is not exhausted or was not fairly presented to the state court and should therefore be denied. (*Id.*); *see also* (Mem. in Opp'n at 2–4).

The Court begins its analysis by examining whether a petitioner has a federal constitutional right to post-conviction counsel.

### 1.    Right to Post-Conviction Counsel at District Court (Ground One)

In general, "[t]here is no federal constitutional right to the effective assistance of post-conviction counsel." *Clay v. Bowersox*, 367 F.3d 993, 1005 (8th Cir. 2004) (citing *Coleman*, 501 U.S. at 752). The United States Supreme Court carved out an exception to this rule:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez v. Ryan*, 132 S. Ct. 1309, 1320 (2012). As used in *Martinez*, an "initial-review collateral proceeding" is a proceeding that gives the petitioner the first opportunity "to raise a

---

[18]    The State cites 28 U.S.C. § 2254(h) for the proposition that claims based on post-conviction are prohibited by statute. (Mem. in Opp'n at 4). But because subpart (h) relates to appointment of counsel, the Court presumes the State meant to refer to subpart (i), which states "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i).

claim of ineffective assistance at trial." *Id.* at 1315. Delk's petition for review of the Post-Conviction Appeal relies almost exclusively on *Martinez. See* (PFR–Post-Conviction Appeal at 3–4).[19] *Martinez*, however, is inapposite.

First, Minnesota state law does not require that an ineffective-assistance-of-trial-counsel claim be raised only in a collateral—meaning post-conviction—proceeding, as described in *Martinez* and as Arizona requires. Instead, whether an ineffective-assistance-of-counsel claim can be raised at a post-conviction proceeding in Minnesota depends on whether additional evidence is required to review the claim. *See, e.g.*, *White v. State*, 711 N.W.2d 106, 110–11 (Minn. 2006) (stating that five of petitioner's eight claims for ineffective assistance of trial counsel were barred in petitioner's post-conviction proceeding by *Knaffla* because petitioner failed to raise them on direct appeal when they could have been "decided on the basis of the trial record and the briefs[,]" and analyzing the remaining claims on their merits); *Torres v. State*, 688 N.W.2d 569, 572 (Minn. 2004) (declining to adopt the rule announced in *Massaro* and reaffirming that *Knaffla* does not prevent an ineffective-assistance-of-counsel claim from being

---

[19]     Delk also cites, but does not discuss *Halbert v. Michigan*, 545 U.S. 605, 610 (2005) (holding defendants who were convicted on their pleas and who seek access to first-tier review in the Michigan Court of Appeals must be appointed counsel); *Massaro v. United States*, 538 U.S. 500, 505, 509 (2003) (discussing the challenges of hearing ineffective-assistance-of-counsel claims on direct appeal and ultimately holding "that failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under [28 U.S.C.] § 2255."); *Strickland*, 446 U.S. 668 (addressing the standard for ineffective assistance of counsel); *Gideon v. Wainright*, 372 U.S. 335 (1963) (extending the Sixth-Amendment right to counsel for criminal defendants to the states through the Fourteenth Amendment); and *Sanchez-Diaz v. State*, 758 N.W.2d 843, 847 (Minn. 2008) (affirming the district court's post-conviction decision that appellant's ineffective-assistance-of-counsel claims known on direct appeal and able to be determined on the trial record but not raised was barred). (PFR–Post-Conviction Appeal at 3). The Court finds none of these are applicable and therefore do not merit further discussion.

raised at a post-conviction proceeding when the claim "cannot be decided on the district court record because it requires additional evidence . . .").

In this case, Delk raised his ineffective-assistance-of-counsel claim for the first time in his Post-Conviction Petition.[20]   (Post-Conviction Mem. at 4).   But unlike the petitioner in *Martinez*, Delk was not prohibited from raising that claim on direct appeal.   Therefore, the holding of *Martinez* is not directly implicated in this case.

Second, *Martinez* applies where a petitioner's ineffective-assistance-of-trial-counsel claim is procedurally defaulted (as could happen under *Knaffla* in Minnesota state courts), and may excuse default due to ineffective or lack of post-conviction counsel.   *See Martinez*, 132 S. Ct. at 1315.   Here, Delk's ineffective-assistance-of-trial-counsel claim is not before this Court because he did not raise it in his Habeas Petition, and is therefore not procedurally defaulted such that this Court can consider whether post-conviction counsel was required.   *See generally* (Habeas Pet.).

Third, *Martinez* does not change the question left open by *Coleman*: whether a scenario where a petitioner's "one and only appeal" with respect to an ineffective-assistance claim is an initial-review collateral proceeding "may justify an exception to the constitutional rule that there is no right to counsel in collateral proceedings."   *Martinez*, 132 S. Ct. at 1315 (citing *Coleman*, 501 U.S. at 755–56).   In fact, the *Martinez* case specifically left that question open, stating that it would not resolve "whether that exception exists as a constitutional matter."   *Id.*   The Supreme

---

[20]   The district court considering Delk's Post-Conviction Petition could have made a determination under *Knaffla* that because the claim could have been brought on Delk's Second Direct Appeal but was not, the claim was defaulted and could not be considered on its merits in post-conviction proceedings.   *See Knaffla*, 243 N.W.2d at 741.   But instead of addressing *Knaffla*, both the district and appellate courts considered Delk's ineffective-assistance-of-trial-counsel claim on its merits.   *See Delk III*, 2012 WL 3792308, at *1, 3.

Court said its decision did not contradict § 2254(i), which expressly prohibits Delk's ineffective-assistance-of-post-conviction-counsel claim as an independent ground for relief.  *Id.* at 1320; (Habeas Pet. at 5).  Because there is no federal constitutional right to effective post-conviction counsel, Delk has failed to make a cognizable federal habeas corpus claim.  *Frink v. State of Iowa*, 968 F.2d 734, 737 (8th Cir. 1992).

Finally, even if Delk was entitled to effective post-conviction counsel, a proposition with which the Court does not agree, his claim would fail on its merits.  In *Martinez*, the Supreme Court held that the petitioner must "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the [petitioner] must demonstrate that the claim has some merit."  *Id.* at 1318.  Delk's ineffective-assistance-of-trial-counsel claim is grounded in trial counsel's alleged failure to raise the Defective-Verdict Claim.  *See* (Post-Conviction Pet. at 4).  As discussed above, this claim has no merit.

For the foregoing reasons, the Court finds that Delk is not entitled to federal habeas relief on Ground One, ineffective assistance of post-conviction counsel at the district-court level.

**F.      Ineffective Assistance of Post-Conviction Appellate Counsel (Ground Two)**

In Ground Two, Delk argues he is entitled to federal habeas relief for ineffective assistance of appellate counsel in the Post-Conviction Appeal because the Post-Conviction Petition was the first opportunity Delk had to raise a claim for ineffective assistance of counsel, and appellate counsel was not appointed.  (Habeas Pet. at 5).  As stated above, there is no federal constitutional right to post-conviction counsel, and therefore this claim fails.  *See Clay*, 367 F.3d at 1005.  Additionally, the Supreme Court expressly stated that its decision in *Martinez* did not apply to "appeals from initial-review collateral proceedings[.]"  *Martinez*, 132 S. Ct. 1320.  Therefore, Delk is not entitled to federal habeas relief on Ground Two.

## III.    CERTIFICATE OF APPEALABILITY

A § 2254 habeas corpus petitioner cannot appeal a denial of his petition unless he is granted a Certificate of Appealability ("COA").   28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court finds it unlikely that any other court, including the Eighth Circuit Court of Appeals, would decide Delk's claims any differently than they have been decided here. Delk has not identified (and the Court cannot independently discern) anything novel, noteworthy, or worrisome about this case that warrants appellate review.  Therefore, the Court recommends that Delk not be granted a COA in this matter.

## IV.    RECOMMENDATION

Accordingly, based upon all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.     Delk's Petition for habeas relief under 28 U.S.C. § 2254 [Doc. No. 1] be **DENIED**;

2.     This action be **DISMISSED**; and

3.     If this Report and Recommendation is adopted, a COA should not issue, and judgment should be entered accordingly.

Dated: January 27, 2014

                                    *s/Steven E. Rau*
                                    STEVEN E. RAU
                                    United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **February 10, 2014,** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.   Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.   A party may respond to the objecting party's brief within ten days after service thereof.   A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.